IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:07cr61-MHT |
| ADRIAN LAMONT WHITE | ) | (WO) |

### OPINION

The question presented to the court is whether the
government's failure to introduce evidence at trial that
the banks involved were federally insured "financial
institutions" warrants setting aside not only a
defendant's conviction on the substantive offense of bank
fraud in violation of 18 U.S.C. § 1344 but his conviction
for conspiracy to commit bank fraud in violation of 18
U.S.C. § 1349 as well.  The court holds that, under the
evidence presented in this case, the answer is yes.


### I. BACKGROUND

On December 13, 2007, after a two-day trial, a jury
convicted defendant Adrian Lamont White of conspiracy to

commit bank fraud in violation of 18 U.S.C. § 1349 (count 1) and the substantive offense of bank fraud in violation of 18 U.S.C. § 1344 (count 8).   Sentencing was set for May 21, 2008.

On May 19, after reviewing the trial transcript in preparation for sentencing, the government discovered that it had failed to introduce evidence at trial that the banks involved were federally insured "financial institutions" within the meaning of 18 U.S.C. § 20.   The parties agreed to postpone sentencing pending resolution of the issue.

After investigating the issue further, the government filed a motion to dismiss count 8 because conviction pursuant to § 1344 requires proof that the banks involved were "financial institutions" at the time of the offense. The government has not sought to dismiss, however, White's conviction for conspiracy under count 1, arguing that White's conviction under § 1349 is valid.   White

2

filed a motion seeking dismissal of both counts given the government's admitted evidentiary failures.

## II. DISCUSSION

### A. The Jurisdictional Requirement of the Underlying Bank Fraud Offense

Bank fraud, as defined in § 1344, requires that the defrauded institution be a "financial institution." Under 18 U.S.C. § 20, a "financial institution" includes an institution insured by the Federal Deposit Insurance Corporation (FDIC) pursuant to 12 U.S.C. § 1813(c)(2).

In order to establish federal jurisdiction in a prosecution for bank fraud under § 1344, the government must prove that the banks involved were federally insured. United States v. Dennis, 237 F.3d 1295, 1303 (11th Cir. 2001) ("Proof of federally-insured status of the affected institution is, for ... section 1344[,] ... a jurisdictional prerequisite as well as an element of the substantive crime.") (quoting United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996) (internal quotations omitted)); United States v. Murrah, 478 F.2d 762 (5th

Cir. 1973) ("[P]roof of FDIC insured status is a required element of proof of the offense.  Indeed it is necessary to allege and prove it to establish federal jurisdiction.").[1]

The defendant need not know of the federally insured status of the bank to sustain a conviction for bank fraud.  Key, 76 F.3d at 353 ("Whether the defendant knew of the victim institution's insured status is not important. That the defendant knowingly directed his conduct at a bank that the government can prove was insured is enough.").

### B. The Jurisdictional Requirements for Conspiracy when the Underlying Offense Is Bank Fraud

The government may obtain a conviction for conspiracy to commit bank fraud (assuming satisfactory proof of the

---

1.   In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4

other elements) in either of two ways.  First, it can prove that the banks <u>actually were</u> federally insured. Such proof is sufficient, under <u>United States v. Feola</u>, 420 U.S. 671 (1975), to sustain a conspiracy conviction if the substantive offense does not require knowledge or intent with respect to that jurisdictional element (which, as noted above, § 1344 does not).

Second, the government may obtain a valid conviction if it proves that the defendant intended to defraud a bank that he believed was federally insured, even if it was not.  Relying on the defendant's mental state to establish the necessary federal elements amounts in the end to little more than the traditional maxim that conspiracy punishes the guilty mind, and that the crime is not vitiated by mere factual impossibility.  <u>See</u> <u>United States v. Williams</u>, 128 S. Ct. 1830, 1843 (2008) (noting that, for inchoate crimes like conspiracy, "impossibility of completing the crime because the facts were not as the defendant believed is not a defense").

While _Feola_ essentially dealt with situations of the first variety, White's case is of the second. Even though _Feola_ is thus not directly applicable (because in that case the actual facts supporting federal jurisdiction were proven), its analysis helps in understanding the interplay between conspiracy and substantive offenses with respect to elements that are jurisdictional. In _Feola_, the crime at issue was assaulting a federal officer. The question was whether the defendant's knowledge of that victim's federal status was relevant for either the substantive offense or the conspiracy. The Supreme Court found that it was not. The Court rejected an old line of cases, beginning with Judge Learned Hand's opinion in _United States v. Crimmins_, 123 F.2d 271 (2nd Cir. 1941), that reasoned that even though knowledge of the jurisdiction-creating facts was not necessary for conviction of the substantive offense, a knowledge requirement existed for conviction of conspiracy to commit the substantive offense. The

lengthy opinion in <u>Feola</u> relied heavily on the policies underlying conspiracy law generally, as well as Congressional intent in creating the jurisdictional prerequisites for the specific assault statute at issue. Of crucial importance for White's case, the Court hinted at the broader impact of its reasoning on questions of federal jurisdiction for conspiracy offenses. The Court first rather simply concluded: "The jurisdictional requirement is satisfied by the existence of facts tying the proscribed conduct to the area of federal concern delineated by the statute. Federal jurisdiction always exists where the substantive offense is committed in the manner therein described, that is, when a federal officer is attacked." <u>Feola</u>, 420 U.S. at 695.

Thus, when a federally insured bank is defrauded, this fact alone is sufficient to establish jurisdiction over the conspiracy charge. <u>Feola</u>, then, in all of its complexity, stands simply for the proposition that when proof of the jurisdiction-creating facts has been made,

7

federal courts have jurisdiction to convict a defendant
of conspiracy even though the defendant had no knowledge
of the existence of those facts--that is, even though the
defendant had no knowledge that she was trouncing upon
<u>federal</u> interests by violating a <u>federal</u> statute and
committing a <u>federal</u> crime.  But proof that the "offense
is committed in the manner therein described" (that is,
that a <u>federally insured</u> bank was defrauded and, thus,
that facts exist "tying the proscribed conduct to the
area of federal concern") is exactly what is missing in
this case.

     White's case therefore falls clearly into the second
category--a category exemplified by <u>United States v.
Shively</u>, 715 F.2d 260 (7th Cir. 1983).[2]  <u>Shively</u> involved

_____

     2.  The Fifth Circuit Court of Appeals, when faced
with a similar situation in <u>United States v. Platenburg</u>,
657 F.2d 797 (Oct. 1981), reversed the convictions of
both conspiracy and the substantive offense when it found
that the government had failed to prove the federally
insured status of the bank.  The case contained no
discussion at all, however, of any distinction between
the two categories of offenses and thus offered no
reasoning upon which to rely here.

18 U.S.C. § 1014, which essentially prohibits making materially false statements to a federally insured bank. The defendant in <u>Shively</u> was the president of the bank in question, and he and a co-conspirator made false statements in order to secure a loan from the bank. <u>Shively</u>, 715 F.2d at 264.  The government failed to prove that the bank was federally insured at the time the false statements were made, and the Seventh Circuit agreed that the defendants could not therefore properly be convicted of violating § 1014.  <u>Id</u>. at 265.  The court nonetheless upheld the conspiracy conviction.

The court in <u>Shively</u> recognized the delicate nature of the jurisdictional issues involved, and it stated that the federal government could not use conspiracy law "to punish all conspiracies to defraud banks, just because most banks are federally insured."  <u>Shively</u>, 715 F.2d at 266.  Otherwise, without proof of any facts linking the case to federal law, the federal government could charge, through conspiracy law, a potentially infinite class of

purely state offenses.  Thus, the Court recognized the common-sense notion that federal jurisdiction be limited in some way.  The court identified the two limiting principles.  First, citing to Feola, it stated: "it is enough if the bank is insured although the defendants do not know it."  Second, it explained: "it is also enough if the defendants intend to defraud a federally insured bank, even though, unbeknownst to them, the bank has lost its insurance."  Id. at 267.  This second prong obviates the need to prove insurance at the time of the offense if the defendants thought the bank was federally insured. As discussed below, the facts in Shively on this question of the defendant's mental state could not be in more stark contrast with the facts here.

The government supports its position by claiming that Shively found that "[p]roof that a bank was insured ... was therefore not required to sustain the conspiracy convictions."  Government's Response (Doc. No. 271 at 7) (quoting Shively, 715 F.2d at 267) (emphasis added).

10

This quotation, plucked out of context from <u>Shively</u>'s discussion of federal jurisdiction, does far less work than the government contends.  Indeed, the "therefore" in <u>Shively</u> actually refers to a discussion earlier in the same paragraph about the overwhelming evidence in that case of the defendant's <u>actual knowledge</u> of the federally insured status of the institution.  The term "therefore" indicated that the defendant's knowledge and belief was the dispositive factor <u>as opposed to</u> the bank's actual status.  Thus, the quotation cannot mean--and indeed, it most certainly did not mean for the court in <u>Shively</u>-- that proof of federal insurance is always irrelevant to conspiracy convictions under § 1349.  In fact, it meant something far less radical; it meant that in some cases, when there is an <u>intent</u> to defraud a <u>federally insured</u> bank, it matters not whether that bank happens to be federally insured and, therefore, matters not that the government proves that actual insurance at trial.  In this way, the Seventh Circuit merely confirmed a long-

11

standing principle of conspiracy law--that factual impossibility is not a defense.

The failure to prove insured status in this case is thus akin to the federal conspiracy having been impossible--that is, it is as if the banks were not in fact federally insured.  Because conspiracy law punishes only the agreement, see Feola 420 U.S. at 694, however, federal conspiracy law may still punish conspiracies that were actually impossible (in this case "impossible" means that it was impossible for the conspiracy to actually violate the federal statute) if the underlying agreement was sufficiently federal.  Shively indicates that an agreement is sufficiently federal if the defendant intended that the target victim be a federally insured bank.

Shively makes sense.  As Feola recognized, federal concerns are sufficiently implicated by a conspiracy for the purposes of jurisdiction when the underlying offenses are shown to be actually tied to the federal interests

12

identified by Congress.  <u>Feola</u>, 420 U.S. at 695.  Federal
concerns are also sufficiently implicated by <u>an agreement</u>
to violate federal laws, even if no underlying federal
laws have actually been violated.   <u>Id</u>.   In both
instances, federal concerns are placed in danger, for
when conspirators come together with the goal of harming
federal interests, the potential threat to federal
concerns is much more significant than when conspirators
come together with the intent to commit a purely state
crime.  When conspirators come together with the belief
that they are committing a non-federal crime, and they do
in fact commit a non-federal crime, it is difficult to
justify federal jurisdiction over their agreement.

A closer reading of <u>Feola</u> lends even more support to
this logic.  The Supreme Court followed its assertion of
federal jurisdiction for conspiracy when the facts
establish federal jurisdiction for the underlying offense
with a cryptic discussion of situations in which the
crime is not committed "as described" in the underlying

13

statute.  <u>Feola</u>, 420 U.S. at 695.  The Court explained that the defendant's knowledge of the facts granting jurisdiction "may be important, in some cases, in establishing the existence of federal jurisdiction." <u>Id</u>. at 695.  The Court identified those cases as situations in which the underlying substantive offense was not committed as described in the statute; for example, if the person actually assaulted was not a federal officer or, extrapolating to White's case, if the bank defrauded was not actually federally insured.  <u>See</u> <u>id</u>.  Thus, when the underlying offense does not provide the proof of the necessary jurisdictional facts, the Court is suggesting another passage into the realm of conspiracy liability: through the knowledge of the defendant.  In that case, the key requirement for jurisdictional purposes is rather simple: "it must be established whether the agreement, standing alone, constituted a sufficient threat to [the relevant federal concern] so as to give rise to federal jurisdiction."  <u>Id</u>.

The Court further explained: "Where the object of the intended attack is not identified with sufficient specificity so as to give rise to the conclusion that had the attack been carried out the victim would have been a federal officer, <u>it is impossible to assert that the mere act of agreement to assault poses a sufficient threat to federal personnel and functions so as to give rise to federal jurisdiction</u>." <u>Feola</u>, 420 U.S. at 695-96 (emphasis added). Thus, when the underlying substantive offense is incomplete, the Court stressed the importance of evidence that, had it been complete, the victim's status would have been closely related enough to federal concerns to warrant jurisdiction. Here, while the problem is not an uncompleted conspiracy, this case shares the same flaw fatal to jurisdiction as the Supreme Court's example: no evidence was produced that would make it possible to conclude that the intended victim was a federally insured bank. Here, where no evidence exists that the conduct posed a threat to the specific kinds of

15

entities protected by the federal statute, it is just impossible to assert that a mere agreement to defraud, just like a mere agreement to assault, "poses a significant threat to federal" interests.

Although not necessary for its holding in Feola, the Court therefore explained that proof of knowledge of the jurisdictional facts may be necessary in some cases, namely, where that knowledge can provide the only federal connection to the conspiracy.  This is such a case.

A recent Eleventh Circuit case provides additional confidence in this result.  In United States v. Campa, 529 F.3d 980 (11th Cir. 2008), the defendant was convicted of conspiracy to commit murder under 18 U.S.C. § 1117 for shooting down two planes.  The underlying substantive offense, 18 U.S.C. § 1111, required that the murder be committed within the special maritime and territorial jurisdiction of the United States.  Id. at 1007.  The defendant argued that he could not be guilty of the offense without proof that he intended the

16

shootdown to occur within that jurisdiction (and not merely in Cuban airspace).  The court relied on <u>Feola</u> to find that intent with respect to this purely jurisdictional element was not necessary either for the substantive crime or for the conspiracy.  Importantly, the court stated its reason for affirming federal jurisdiction over the conviction:  "The evidence established that the shootdown <u>actually occurred in the special maritime or territorial jurisdiction of the United States.</u>"  <u>Id</u>. at 1008 (emphasis added).  Thus, the proof at trial of the <u>actual predicate facts implicating the federal statute</u> was the jurisdictional hook that upheld the conviction.  The court specifically noted that the defendant "does not argue" that any facts other than his knowledge of the location of the incident were "insufficient to render his conspiracy a matter of federal concern."  <u>Id</u>. at 1007-08.  Here, however, that is precisely what White is alleging.  He is therefore in the very position that the court in <u>Campa</u> distinguished.

Not only does White assert a lack of knowledge with respect to the jurisdictional elements (more precisely, he asserts a lack of evidence sufficient to prove his knowledge), but he also essentially argues that the predicate jurisdictional elements themselves were not met, and that, therefore, there is simply no way for a federal court to determine that his case is a matter of federal concern.

White's mental state--his knowledge of whether the banks were federally insured--is thus key to establishing federal jurisdiction over the conspiracy charge at this juncture in the case because the government's evidentiary failures at trial have blocked for it the far easier path toward federal jurisdiction.

### C. The Sufficiency of the Evidence at Trial

The government argues that it did in fact present sufficient evidence at trial to show that "White was aware of the banking system and that he was defrauding

18

banks, which were national banks, required by law to be federally insured." Government's Cross-Brief (Doc. No. 285) at 4. It attempts to support this assertion with references to trial testimony that purportedly meet its burden, including that White had opened and operated several bank accounts that he used "for at least four or five years." The government also notes that the banks involved are actually national banks and included the words N.A. or "National Association" in some of their records and corporate titles. There was, however, no testimony that White thought the banks involved here were federally insured.

In determining whether federal jurisdiction exists, the court examines the sufficiency of the evidence offered by the government. United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996) ("Whether the government proved the jurisdictional element is measured as a challenge to the sufficiency of the evidence."). Thus, the concepts of jurisdiction and sufficiency of proof of the

19

substantive elements merge. The relevant inquiry in making this determination is whether a reasonable jury could have found the jurisdictional element to have been satisfied beyond a reasonable doubt. Id.

A review of cases applying this standard in similar contexts shows that the government clearly did not meet its burden in White's trial. The Eleventh Circuit examined at length what quantum of evidence is sufficient for proving federally insured status in a bank-fraud prosecution in United States v. Dennis, 237 F.3d 1295 (11th Cir. 2001). In that case, a government agent testified that the banks involved were federally insured. However, the court found that this testimony was not sufficient to establish the element:

> "The agent's conclusion that the bank
> was federally insured appears to be
> premised upon his belief that because a
> bank is a 'national bank,' it is
> necessarily a 'federally insured bank.'
> This reasoning lacks legal support. A
> 'national bank' is not necessarily
> 'federally insured.' As demonstrated by
> pertinent statutory provisions, the two

concepts   are   distinct   and   not
synonymous."

Dennis, 237 F.3d at 1305.  The court also noted that none

of the documents in evidence gave "any indication that

the bank was federally insured."  Thus, the court in

Dennis found that the evidence was insufficient to prove

beyond a reasonable doubt that the bank in question was

federally insured.  Similarly, here, none of the

documents offered by the government in White's trial

contains any indications of insurance, such as "Member

FDIC."  The court in Shively also addressed this issue;

it noted that, even though "national banks are required

by law to be insured by the FDIC, you cannot infer from

the fact that someone is required by law to do something

that he has done it....  [A] national bank like any other

bank can lose its insured status."  Shively, 715 F.2d at

265 (citations omitted).

While this analysis technically applies only to

whether the government proved federally insured status--

not to whether it proved the defendant's knowledge of

that status--it is plainly instructive as to the quantum of evidence required to infer a defendant's knowledge and, more specifically, it indicates that the government's arguments about the abbreviation "N.A." and the words "National Association" simply cannot be enough. Moreover, in spite of the government's vague assertion that White's testimony indicated that he had knowledge of the banking system, there is simply no evidence that White had knowledge of what these terms and abbreviations could mean or that he was a sophisticated banking customer who likely would have had any knowledge about the federal deposit insurance system. The mere successful use of a few bank accounts for several years-- a task easily completed by millions of Americans--cannot be sufficient to prove knowledge of the workings of the federal bank insurance system such that White can be said to have intended to conspire to defraud <u>federally</u> insured banks.

A review of <u>Shively</u> further supports this conclusion. In <u>Shively</u>, the defendant was the president of the target bank, and there was evidence that the bank "had once been insured" from a certificate of insurance that was several years old; there was also evidence that the bank "continued to represent to the public that it was insured." <u>Shively</u>, 715 F.2d at 267. These two facts enabled the jury to conclude that the bank's president knew or thought the bank to be still insured. Thus, unlike in White's case, there was direct evidence that the bank was federally insured. As a general matter, the president of a bank is also far more likely than an ordinary customer to have knowledge of these facts because the president and other officers are responsible for securing and maintaining that very insurance. It is far more reasonable for a jury to conclude that a bank president in these circumstances has knowledge of the insured status of his "national" bank. The defendant in <u>Shively</u> could not be more different from White in this

regard.   White was never asked in any detail about the extent of his knowledge or experience with the banking system, and it is not contended that White testified that he had any knowledge of the federally insured nature of the banks he defrauded.[3]   There is simply not enough evidence for the jury to have concluded that White had such knowledge.

Finally, the government argues that "it is uncontested that each of the banks at issue are in fact, actual 'Financial Institutions' as that term is defined by 18 U.S.C. § 20.  This is a fact [] over which the Court may take judicial notice."  Government's Cross Brief, at 4.  While the government is correct that this issue is uncontested, it is in fact the <u>opposite</u> proposition that is uncontested given the actual record in this case; in other words, for the purposes of White's case, it is uncontested that the relevant banks are <u>not</u>

_____

3.   Nor is this surprising because, at trial, the government was not even attempting to prove White's knowledge; rather, it assumed that it had proved actual insurance.

federally insured.  The government is confusing its own common knowledge of the current insured status of several large banks with what it <u>actually proved</u> to the jury in this case.  This is an understandable error, and the impulse to invoke judicial notice of such a seemingly obvious fact is understandable.  However, if the court were actually able to address the problem in this manner, then the government's motion to dismiss count 8 is indeed curious.  If such a mistake was uncontested and could easily be cured by judicial notice, there would be no need to dismiss the bank fraud conviction in count 8.  In fact though, contrary to the government's claim, the court cannot take judicial notice of this fact at this time.

First, if it were true that the court is empowered to take such notice, the Eleventh Circuit would never have engaged in its analysis in <u>Dennis</u> or in any of the other cases in which appellate courts scrutinized the proof at trial of the insurance status of a bank.

Second, it would be a quantum leap to move from taking notice of the fact that national banks are <u>required</u> to be federally insured to taking notice of the fact that a particular bank was insured at a particular time.  Banks and bank executives, like everyone else, are prone to occasional errors or lapses, and, for a variety of reasons, are not always aware of every regulatory requirement or willing and able to comply with them.  <u>See</u> <u>Shively</u>, 715 F.2d at 265 (noting that, even though "national banks are required by law to be insured by the FDIC, you cannot infer from the fact that someone is required by law to do something that he has done it.... [A] national bank like any other bank can lose its insured status." ) (citations omitted).

Third, proof of insured status is a required element of the substantive offense, and it must be proven beyond a reasonable doubt to a jury.  No evidence was presented to the jury on this question, and a court cannot, after jury trial, correct this error.  Moreover, even had the

court taken such notice at trial, the court's judicial
notice of this fact would have been subject to the jury's
own determination.   See Fed.R.Evid. 201(g) ("In a
criminal case, the court shall instruct the jury that it
may, but is not required to, accept as conclusive any
fact judicially noticed.").  To withhold judicial notice
until after trial would deprive the defendant of the
right to have the jury decide each incriminating fact and
element.[4]  Neither this court nor any other court has that

_____

        4.  The government cites to United States v. Mauro,
501 F.2d 45 (2d Cir. 1974), for the proposition that
insured status can be judicially noticeable.  However,
the cryptic opinion in Mauro primarily relies on Byers v.
United States, 175 F.2d 654 (10th Cir. 1949), which is
itself about the sufficiency of indictments.  A court
inferring federally insured status from indications of a
bank's national status in an indictment is a
significantly different question from a court sustaining
a conviction based on the same quantum of proof.
Moreover, Mauro was decided prior to Burks v. United
States, 437 U.S. 1 (1978), which held that, because of
Double Jeopardy, courts of appeals could no longer order
new trials when they found that the evidence was legally
insufficient to support the verdict.  Mauro explicitly
relied on cases that erroneously assumed that appellate
courts could order new trials, and it seems that Mauro's
assumption about judicial notice was a product of the
belief that taking such notice would simply be easier
                                        (continued...)

power.

The submissions in this case reflect some confusion over these matters--that is, who proves jurisdiction, when, by what standard, and relying on what facts. Much of this confusion no doubt is a product of the fact that many of those involved in the case are fairly certain that the well-known banks involved are required to be federally insured--and, by extension, were insured at the time of the offense. But the failure to prove that fact at trial means that, in the world of White's case, absolutely nothing is known about these banks. Thus, it simply cannot be established that "the agreement, standing alone, constituted a sufficient threat" to any federal concern. See Feola, 420 U.S. at 695. Moreover, the concept of subject-matter jurisdiction can at times be difficult to understand. While defects in subject-

---

4.  (...continued)
than remanding for a new trial or an evidentiary hearing on the sufficiency of the evidence for that one element. In any event, to the extent Mauro suggests that courts may take judicial notice of federally insured status to affirm a conviction, this court disagrees.

28

matter jurisdiction may be raised at any time, see United States v. Cotton, 535 U.S. 625, 630 (2002), they cannot necessarily be cured at any time.  The government has cited to no authority that would allow the court to reopen and enlarge an evidentiary record after a jury verdict.  The government's understandable desire for the court simply to acknowledge what appears to be a commonly known fact cannot be allowed where the proof of that fact at trial is necessary to both the court's jurisdiction and to sustain a conviction under substantive law.

Because no evidence submitted at White's trial establishes any connection whatsoever to federal law or federal interests--either by proving an actual connection or an intended connection--there is simply no way for a federal court to assert jurisdiction over the matter.


D. Remedy

Before the court are the defendant's motion to dismiss both counts and the government's motion to

**29**

dismiss count 8.  The government seeks dismissal pursuant
to  Fed.R.Crim.P.  48(a),  which  provides  that  the
"government  may,  with  leave  of  court,  dismiss  an
indictment."[5]  The government correctly points to both the
broad power of the government to dismiss indictments and
the significant discretion given to the court in granting
leave to allow such dismissals under Rule 48(a).  See
United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975)
(limiting discretion of trial judge to deny government
leave to dismiss only to cases in which dismissal would
be "clearly contrary to manifest public interest").  The
circumstances of the case make the government's request
for dismissal understandable, and White does not object
to the motion.  Accordingly, count 8 will be dismissed
pursuant to Rule 48(a).  This result, however, removes
only one of White's improperly tried counts.  The court

---

    5.  It should be noted that the indictment in this
case sufficiently alleges the federally insured element,
and it is therefore not itself defective.

is still left with the substance of White's motion, which urges the invalidation of both.

Although White's motion is styled as a motion to "dismiss" each count, White offers no authority allowing the court to <u>dismiss</u> the counts upon motion of the defendant in these circumstances.  Nonetheless, White's submissions also refer to Fed.R.Crim.P. 29 (motion for judgment of acquittal) as a remedy and are otherwise completely consistent with a Rule 29 motion.  In addition, the government itself urges the court to allow White to file an untimely Rule 29 motion.  As a result, any motion by White to dismiss the indictment--to the extent his motions are styled in that fashion--will be considered instead as a motion under Rule 29 for a judgment of acquittal.

Rule 29(c)(1) requires the defendant to move for a judgment of acquittal within seven days of the jury verdict.  It is not disputed that White's motion is untimely.  An untimely Rule 29 motion, however, does not

deprive the court of jurisdiction to entertain it. Eberhart v. United States, 546 U.S. 12, 19 (2005), makes clear that Rule 29 is not jurisdictional, but is rather a "claim-processing rule." Both parties acknowledge, however, that untimely motions are to be entertained only if the moving party can show "excusable neglect" under Fed.R.Crim.P. 45(b)(1).

Here, the government urges that the court allow White's Rule 29 motion with respect to count 8 because of excusable neglect. Both parties identify the relevant standard for excusable neglect. The standard is flexible, and it may extend to omissions the result of "inadvertence, mistake, or carelessness." Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 388 (1993).[6] Moreover, the court should consider all the

---

6. While Pioneer was interpreting "excusable neglect" in the context of the Federal Bankruptcy Rules, it explicitly noted that the federal courts treat Fed.R.Crim.P. 45 in a similar way and that both Rule 45 and the bankruptcy rule at issue were modeled after the same rule of civil procedure (Fed.R.Civ.P. 6(b)). Pioneer, 507 U.S. at 392 n.9. Moreover, Eberhart (continued...)

relevant circumstances, including the danger of prejudice to the non moving party, the length and reason for the delay, and the extent to which it was in the party's control.  <u>Advanced Estimating Sys. v. Riley</u>, 77 F.3d 1322, 1325 (11th Cir. 1996).  In addition, "primary importance should be accorded to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration."  <u>Id</u>.  Here, the factors identified by the parties are particularly persuasive.  None of the parties timely realized the mistake, which is indeed rather uncommon.  Moreover, both parties are now seeking redress for the government's failure in proof, and there is no danger of prejudice to either.  While White could have noticed and objected to the defect, the primary importance of efficient judicial administration counsels strongly in the direction of entertaining the motion.  As the government points out, this kind of error

---

6.  (...continued)
explicitly recognizes the direct analogy between the Federal Bankruptcy Rules and the Federal Rules of Criminal Procedure.

is clear in the Eleventh Circuit's case law, and if it is not corrected now it will certainly be corrected on appeal. See United States v. Cotton, 535 U.S. 625, 635 (2002) (stating that defects in subject-matter jurisdiction can never be waived and can be raised at any time). Applying that logic to both counts, if the court is able to correct an error that will save substantial further litigation, the flexible Rule 45 standard should accommodate it.

Admittedly, the defense of timeliness can be forfeited or waived if the party invoking the rule's limitations "waits too long to raise the point." Eberhart, 546 U.S. at 18. Thus, when the government "failed to raise a defense of timeliness until after the District Court had reached the merits, it forfeited that defense." Id. at 19. Here, the government not only does not object to White's Rule 29 motion, but it has urged the court to consider the untimely motion. It is true that the government urges this with respect to only count

8. However, the stated reason for the government's distinction between the two counts is its belief that the law renders one count "viable" and the other not. Because this court has determined that neither count is viable as a matter of law, the distinction the government sought to draw no longer holds, with the result that White's Rule 29 motion should be considered timely as to both counts 1 and 8. Moreover, even if only one count were viable, it would still be difficult to understand how a Rule 29 motion with respect to one count would be objectionable as untimely when the same motion with respect to another count is not.

Nonetheless, the court may still, under Rule 45, allow the motion if excusable neglect is shown. If the government is correct in asserting that the circumstances in this case justify excusable neglect for count 8, it seems likely that they justify excusable neglect for count 1 if the only difference is the level of clarity of the circuit's law on the validity of the conviction. If

anything, it would be more excusable for a defendant to fail timely to object to a defect in the conviction that was <u>less clear</u> as a matter of law.    In fact, the government conceded at oral argument that it would be an "odd result" to treat the two counts differently with respect to excusable neglect.    Thus, for all of the reasons set forth above, White's neglect in timely filing his Rule 29 motion was excusable.

Finally, the various and at times conflicting rules invoked in support of the parties' motions indicates some confusion between them about the relationship between acquittal based on insufficient evidence and the court's finding that it lacked jurisdiction to convict White. While judgment of acquittal is the natural result when the elements of a crime have not been sufficiently proven to the jury, these offenses rely on the proof of those facts to establish the court's very authority to hear the case.    A judgment of acquittal predicated on the failure to prove the element of federal insurance thus amounts to

an assertion that the court has no jurisdiction over the
case.  But a Rule 29 motion remains a proper motion to
challenge the failure to prove a required substantive
element, independent of that element's connection to
jurisdiction.  Moreover, a Rule 29 motion is the natural
motion that White could have made at the conclusion of
all the evidence in order to challenge the sufficiency of
the evidence in support of his conviction.  Only by
making a motion challenging the sufficiency of the
evidence could a subsequent determination of jurisdiction
even be made. In fact, this jurisdictional question is
not a preliminary one--<u>it can only be determined after a
trial on the merits</u>.  Thus, when jurisdiction is
inevitably intertwined with sufficiency of a substantive
element, a Rule 29 motion after trial must be a proper
form of attack and relief.

    In addition, the court has the independent
obligation, regardless of the stage of the proceedings
and independent of a specific timely request from the

37

parties, to correct defects in subject-matter jurisdiction. Cf. United States v. Betancourth, --- F. 3d ----, 2009 WL 66420 at *3 (11th Cir. Jan. 13, 2009) (holding that even after a defendant has pled guilty, challenges to the court's subject-matter jurisdiction cannot be waived); United States v. De La Garza, 516 F.3d 1266, 1271 (11th Cir. 2008) (same). As a result, the court's decision is independently supported by its lack of power to enter judgment against White. Cf. University of South Alabama v. American Tobacco, 168 F.3d 405, 410 (11th Cir. 1999) ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.") (citing Ex Parte McCardle, 74 U.S. 506, 514 (1868) ("[W]ithout jurisdiction the court cannot proceed at all in any cause.")).

***

For all of the reasons set forth above, the government failed to prove the elements required to convict White of a violation of either 18 U.S.C. § 1344 (bank fraud) or 18 U.S.C. § 1349 (conspiracy to commit bank fraud). Accordingly, the government's and White's motions will be granted, and White will be discharged. An appropriate judgment will be entered.

DONE, this the 19th day of February, 2009.

  /s/ Myron H. Thompson  
UNITED STATES DISTRICT JUDGE